Connie H. BACUS, et al., Plaintiffs,

v.

PALO VERDE UNIFIED SCHOOL DIS-
TRICT BOARD OF EDUCATION,
et al., Defendants.

No. EDCV98–0001RT(VAPX).

United States District Court,
C.D. California.

July 29, 1998.

Bonnie Bailey–Jones, Josephine M. Chow, Haight, Brown & Bonesteel, Riverside, CA, for defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

TIMLIN, District Judge.

Plaintiffs' motion for a preliminary injunction ("Motion") was submitted for decision. The court, the Honorable Robert J. Timlin, has read and considered the complaint, the moving, opposing and reply papers, as well as any admissible evidence. Based on such consideration, the court concludes as follows:

### I.

### Procedural Background

Plaintiff Connie H. Bacus ("Bacus") and Floyd Brosman ("Brosman") (collectively "Plaintiffs") filed the instant action seeking injunctive and declaratory relief against the Palo Verde Unified School District Board of Education ("Board"), Daryl Attig ("Attig")[1], and Karen Hays ("Hays") (collectively "Defendants"). They allege that the religious prayer invocation ("invocation") at the opening of Board meetings violates the Establishment Clause of the First Amendment of the United States Constitution as incorporated by the Fourteenth Amendment, thereby depriving them of their First Amendment rights in violation of 42 U.S.C. Section 1983. The plaintiffs are seeking a preliminary injunction to restrain the defendants from sponsoring, facilitating, engaging in, or including spoken prayers at any and all meetings of the Board.

### II.

### Factual Background

Bacus and Brosman are teachers in the Palo Verde Unified School District

Daniel P. Tokaji, Peter J. Eliasberg, Mark D. Rosenbaum, Los Angeles, CA, for plaintiffs.

("PVUSD"). Bacus is currently the president of the Palo Verde Teachers' Association and regularly attends Board meetings as part of her duties as president. Brosman is a past president of the Palo Verde Teachers' Association and regularly attended Board meetings as part of his duties as president. Attig is Interim Superintendent of PVUSD and Hays is president of the Board. The Board meets once or twice a month. The meetings are held to conduct the business of the PVUSD in public. The business of the Board is to set policies, approve employment decisions, approve a budget and approve or disapprove all expenditures in the district. The annual budget for the district exceeds $20 million dollars. Board meetings fundamentally involve the presence of adults doing adult business, i.e. governing of the schools in the PVUSD. During the business portion of a Board meeting most attendees are adults.

Each board meeting is opened with an invocation which is led by an individual who is present at the time of the beginning of the meeting and whom the president of the Board invites to do so. Hays has stated the following in her declaration.

"Since I have been a member of the Board of Trustees the invocation has been offered by Daryl Attig, Business Superintendent, or if he was absent or unavailable, the president of the Board would request someone present at the meeting to offer the invocation. Since I have been president of the Board of Trustees, I have requested a parent and a member of a ministerial association and also Daryl Attig to give the invocation. I do and did not make any prior arrangements with these individuals to give the invocation, but simply asked them to do it when I saw them at the meeting, and realized that we needed someone to give the invocation. The individuals were chosen at random and I did not seek to exclude or include anyone because of their religious beliefs. I based my selection on those who were present, and whom I believed would feel comfortable speaking in public. The invocation is given as a means to focus the meeting on the responsibilities of those present at the meeting and to ask for guidance to make appropriate decisions for the children in the community. On occasion, the prayer refers to a specific student or member of the community who needs assistance. For instance, recently the invocation requested that encouragement, strength and courage be given to a child and her family as the child was to undergo major lung surgery. The invocation focuses the members of the Board and reminds them that their decisions are to be made for the benefit of the children in the District. The invocation is not offered to proselytize, to promote religion, to promote one religion over another or to convert audience members or promote any particular belief. As president of the Board of Trustees, I would welcome any representative of any faith to give the invocation."

The only limitation on the content of the invocation is that it must remind the Board members of their common goal to work for the benefit of the children of the PVUSD. No individual is required to be in attendance at the invocation in order to participate in or attend the Board meeting, nor is anyone required to be present during the actual invocation or participate in it. During the invocation school children may be present but a substantial majority of the attendees at that time are adults. Anyone, child or adult, is free to leave during the invocation and then return to the Board meeting.

## III.

### Evidentiary Objections

Defendants have lodged several objections to the declarations and exhibits submitted to the court by Plaintiffs in support of their motion. The court rules on each of Defendants' evidentiary objections separately, as follows:

1. Declaration of Connie H. Bacus
   a. Paragraph 7, Lines 22–23.          Overruled.
   b. Paragraph 8, Lines 25–8, 1–12.     Overruled.
   c. Paragraph 9.                       Overruled as to page 3, line 13 to line 16 ending with "... religious." Sustained as to line 16 beginning with "when ..." through line 20—Inadmissible conclusion and speculation.
   d. Paragraph 13, Lines 5–13.          Sustained —Irrelevant.
   e. Paragraph 14.                      Sustained —Irrelevant.
   f. Paragraph 15.                      Sustained —Irrelevant.
   g. Paragraph 16.                      Sustained —Irrelevant.
   h. Paragraph 17.                      Sustained —Irrelevant.
   i. Paragraph 18.                      Overruled.
   j. Paragraph 21, Lines 7–10.          Overruled as to the first sentence. Sustained as to the second sentence—Irrelevant.
   k. Paragraph 24.                      Sustained as to line 4 beginning with "Mr. Harkinson...." through line 5—Hearsay. Overruled as to the remainder of the paragraph.
   l. Paragraph 26.                      Overruled.
   m. Paragraph 27.                      Overruled except sustained as to page 9, line 4 beginning with "He also ..." through line 8—Irrelevant.
   n. Paragraph 30, Lines 20–6.          Overruled except sustained as to page 9, line 20 beginning with "most non Christians" to line 22 ending with "are concerned,"—Speculation.
   o. Paragraph 31.                      Overruled.
   p. Paragraph 32.                      Overruled.
   q. Paragraph 33, Lines 6–8, 11–13.    Overruled.
   r. Paragraph 36, Lines 20–21.         Overruled.
2. Declaration Of Floyd Brosman
   a. Paragraph 4.                       Overruled.
   b. Paragraph 5, Lines 27–8, 2–4.      Overruled.
   c. Paragraph 6, 7, 8.                 Sustained —Irrelevant.
   d. Paragraph 10, Lines 7–9.           Overruled.
   e. Paragraph 12.                      Overruled.
   f. Paragraph 13, Lines 1–5.           Overruled.
3. Exhibits
   a. Exhibits 4, 5, 6, 7.               Sustained.
   b. Exhibit 8.                         Overruled except sustained as to the first five lines of the 1st paragraph ending with "in the district," paragraphs 4 and 5,—Irrelevant.
   c. Exhibit 14.                        Overruled.

---

## IV.

### Analysis

#### A. Standard for Motion

The Court has the authority to grant a preliminary injunction in the exercise of its equitable powers. Fed.R.Civ.P. 65. Because the Court is acting in equity, the decision whether to issue a preliminary injunction is largely left to its discretion. *See Big Country Foods, Inc. v. Board of Educ. of Anchorage School Dist.,* 868 F.2d 1085, 1087 (9th Cir.1989). Traditionally, this rule has been interpreted to require the trial court to consider the likelihood that plaintiff will prevail on the merits *and* the possible harm to

the parties from granting or denying the injunctive relief. *See Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir.1987); *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir. 1984).

At the extremes, the party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, *or* (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1448 (9th Cir.1988); *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Miss World,* 856 F.2d at 1448 (quoting *Rodeo Collection,* 812 F.2d at 1217). However, in any situation, the Court must find that there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude. *Big Country,* 868 F.2d at 1088 (citing cases); *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.,* 762 F.2d 1374, 1376 (9th Cir.1985) (citing cases).

**B. The *Marsh* analysis applies to the Board meetings in the instant case and plaintiff has failed to establish either probable success on the merits or irreparable harm sufficient to justify the issuance of a preliminary injunction.**

Plaintiffs contend that (1) the invocation that opens the Board meetings violates the Establishment Clause under tests set out by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), and (2) the exception carved out by the Supreme Court in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), regarding legislative sessions does not apply to the invocation at Board meetings because of the public school context of the meeting and because the invocation is overtly sectarian, with its emphasis on Christianity. Defendants' contend that (1) the school board is a deliberative public body which has the function of conducting the business of the schools and as such, the analysis of *Marsh v. Chambers* applies and (2) under the *Marsh* test, the invocation held at the opening of the Board meeting is constitutional.

In analyzing the constitutionality of an invocation, the Supreme Court has recognized "heightened concerns" in applying the Establishment Clause in the public school context. *Lee v. Weisman,* 505 U.S. at 592, 112 S.Ct. at 2658. The rationale underlying this principle and the reasoning of other related Supreme Court decisions is that children are particularly susceptible to indoctrination or coercion and thus Establishment Clause protections must be stringently applied where school children are concerned.

However, in certain contexts not involving schools or school related functions, the Supreme Court has applied less rigorous standards to an invocation opening the session of a deliberative public body. In *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court held that the Nebraska legislature's practice of opening each legislative session with an invocation did not violate the Establishment Clause. In so holding, the Supreme Court recognized the historical tradition of solemnizing sessions of deliberative public bodies with prayer. It opined that opening a legislative session with prayer did not present a real danger of establishing religion, and that the audience to which the prayer was directed were adults and presumably not susceptible to religious indoctrination or peer pressure.

Under the facts of this case the court concludes that the applicable analysis to apply regarding plaintiffs' allegations that the invocation at the Board meetings violates the Establishment Clause of the First Amendment is the one provided in *Marsh* rather than the analysis and tests set out in *Lemon* and *Weisman.*

Although this court recognizes that a school board does conduct the business of the public schools, a school board meeting does not cause the heightened concerns regarding children found in school related con-

texts. Members of a school board are elected public officials, not school children. The main purpose of a school board meeting is to conduct the business of the public schools. California Education Code § 35160.1(b) gives school boards "broad authority to carry on activities and programs, including the expenditure of funds for programs and activities, which in the determination of the governing board of the school district ... are necessary or desirable in meeting their needs...." The Board is the governing body of the PVUSD whose annual budget exceeds $20 million dollars. The responsibilities of the Board include the determination of "curriculum, policies, employment/personnel decisions, contracts, budgets and all expenditures in the district, including real estate and litigation." Its function is primarily policy and rule making which makes it akin to a deliberative public body.

The district court in *Coles v. Cleveland Bd. Of Educ.*, 950 F.Supp. 1337 (N.D.Ohio 1996), facing an identical issue, concluded that a school board meeting was not a school related function but instead a deliberative public body and thus fell under the criteria established by *Marsh*.

> "The Court is of the view that prayer at a school board meeting is of a different species than prayer in a classroom or at a graduation ceremony. A board meeting is fundamentally a meeting of adults, open to the public and conducted for the purpose of doing public business. The atmosphere is not the same atmosphere as a classroom or a graduation ceremony which are fundamentally student functions meriting the particular Establishment Clause protections afforded to youths in Supreme Court jurisprudence."

*Id.* 950 F.Supp. at 1345. The court agrees with this analysis in *Coles*.

The plaintiffs in the instant case are adults who voluntarily attend Board meetings as individuals and in their capacity as officers of the Palo Verde Teacher's Association. As adults, plaintiffs are not susceptible to religious indoctrination or coercion, the underlying dangers recognized by the Supreme Court in its decisions prohibiting prayer at school functions. As the Supreme Court recognized in *Marsh*, there is less need for the stringent protection recognized in the school cases where "[h]ere the individual claiming injury by the practice is an adult, presumably not readily susceptible to religious indoctrination or peer pressure." *Id.* 463 U.S. at 792, 103 S.Ct. at 3336.

In support of their argument that Board meetings should be considered school related functions, plaintiffs submit that some students are: invited to attend Board meetings, given awards at Board meetings, and given credit for attending Board meetings. However, the fact that at any given Board meeting there may be children present in the audience, some of whom may participate in an award session or address the Board on a particular topic, does not change the nature or the function of the Board meeting. A Board meeting is a meeting of adults with official business and policy making functions. Such meetings do not have the mandatory or compulsive nature of an official school function, e.g. graduation at which students may believe they are required to attend. The court further agrees with *Coles* statement that "these facts are not sufficient to transform this into a 'school' case for purposes of analysis. The presence of a small number of students does not change the fact that the board is an elected body consisting of adults conducting public business in public meetings." *Coles*, 950 F.Supp. at 1346.

■ Plaintiffs also contend that the invocation at the school board meetings violates the *Marsh* standards because the invocation is overtly sectarian with frequent references to "Jesus" or "Jesus Christ" and is basically a Christian prayer. However, the *Marsh* court explained that:

> "The content of the prayer is not of concern to judges where, as here, there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief. That being so, it is not for us to embark on a sensitive evaluation or to parse the content of a particular prayer."

*Id.* 463 U.S. at 794–95, 103 S.Ct. at 3337–38. The court concludes that the declaration of Bacus which asserts that she has heard "Jesus Christ" mentioned in the invocation is insufficient to show that the invocation is used as a vehicle to proselytize or advance

the Christian religion. Substantial evidence persuades this court that the Board and its members do not use the invocation or intend to use the invocation to advance the Christian faith or to disparage other faiths. Thus, the court deems it unnecessary to analyze the specific content of the invocations. *See Coles,* 950 F.Supp. at 1347.

Further the evidence is conclusive that the Board had no direct or indirect involvement in the selection of the particular person, who is requested to give the invocation or in the content of the invocation. There has been no evidence presented to the court showing that the Board directly or indirectly coerced any person's attendance during the invocation. The invocation's purpose is to benefit the members of the Board in the performance of their duties; not the attendees of the Board meeting. No one is required to be present during the invocation.

■ Based on the foregoing, plaintiffs have failed to establish any likelihood of success on the merits of their First Amendment claim. In order to obtain a preliminary injunction, a party must show both likelihood of success on the merits and the possibility of irreparable injury. *Miss World,* 856 F.2d at 1448.

■ The court is not persuaded by plaintiffs argument that they will suffer irreparable harm should the preliminary injunction fail to issue. Although Bacus and Brosman have submitted declarations which state that they will continue to attend Board meetings, the court concludes that neither is required to be in attendance at the invocation which occurs at the opening of the meeting. Both are adults and their age, background, education, and sophistication precludes them from being indoctrinated as to religious principles in which they do not believe, Christian or otherwise. Although the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable harm, *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), this must be balanced with the reasonable likelihood of success on the merits. The less the likelihood of success on the merits, the greater irreparable harm is required. *See Miss World,* 856 F.2d at 1448. Balancing the lack of likelihood that plaintiffs will succeed on

the merits of their contentions that the invocation at the opening of the Board meeting does violate the First Amendment against no apparent irreparable harm to plaintiffs if an injunction does not issue, the court concludes there is no basis for the issuance of a preliminary injunction.

On the basis of the above analysis, the court will deny the motion for a preliminary injunction.

## V.

### Disposition

IT IS ORDERED THAT

Plaintiffs' motion for a preliminary injunction is denied.